UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**Philip von Kahle in his capacity as assignee for the benefit of the creditors of Coex Coffee International, Inc.,**

                          Plaintiff,

-against-

**Cargill, Inc.,**

                          Defendant.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/24/2022

1:21-cv-08532 (AT) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a dispute between the parties regarding whether the work product doctrine and/or the attorney-client privilege applies to information that was redacted from the column labeled "NOTES" in an Electronic Transactions Summary ("ETS") produced by Plaintiff Philip von Kahle ("Plaintiff"), in his capacity as assignee for the benefit of creditors of Coex Coffee International, Inc. ("Coex Miami"). (*See* 3/17/22 Ltr. Mot., ECF No. 74, at 1-5.) For the reasons set forth below, the Court finds that the information is protected by the work product doctrine and that Defendant Cargill, Inc. ("Defendant" or "Cargill") has not shown a substantial need for such information and that it is unable obtain substantially equivalent information by other means.

**BACKGROUND**

In July 2020, Coex Miami, a business that bought and sold coffee in Miami, Florida, initiated an insolvency proceeding in Florida state court known as an assignment for the benefit of creditors, which is a state-law governed alternative to the federal bankruptcy system. (First

Am. Compl., ECF No. 26, ¶ 1.) More than sixty of Coex Miami's creditors filed claims against the assignment estate seeking to recover more than $220 million. (*See id*.)

On October 15, 2021, Plaintiff, as assignee for the benefit of creditors of Coex Miami, filed this action seeking to avoid three limited guarantees and to avoid and recover $91,593,168.18 in transfers – both of which Plaintiff contends were actually and constructively fraudulent transfers – between Coex Miami and Cargill, a privately held global food corporation. (*See* Compl., ECF No. 1, ¶ 1.) On November 29, 2021, Plaintiff filed his First Amended Complaint. (*See* First Am. Compl.)

On December 22, 2021, Cargill served Plaintiff with forty Requests for Production ("RFPs"). (3/17/22 Ltr. Mot. at 1.) In his response served on February 3, 2022, Plaintiff refused, in response to RFP 14, to produce the ETS, which is an Excel spreadsheet that Michael Moecker & Associates, Inc. ("Moecker"), his financial advisor, created to administer Coex Miami's estate, on the grounds of the attorney-client privilege and work product doctrine. (*See id*. & Ex. A, ECF No. 78-1, at 2, 9.) On March 10, 2022, following discussions between the parties, Plaintiff produced the ETS with all comments from Moecker redacted. (*See* 3/17/22 Ltr. Mot. at 3.) On March 17, 2022, the parties filed the Letter Motion, in which the issue regarding the ETS was raised, among others. (*See id*. at 1-5.)

On March 18, 2022, this action was referred to me for general pretrial purposes. (Order of Ref., ECF No. 75.) On March 21, 2022, I ordered Plaintiff to deliver to my Chambers no later than March 24 a thumb drive containing (1) for *in camera* review, an unredacted version of the ETS, and (2) the redacted version of the ETS. (3/21/22 Order, ECF No. 77.) On March 24, 2022, the thumb drive timely was delivered to my Chambers and the unredacted and redacted versions of the ETS, which were in native Excel format, were reviewed by me.

On March 25, 2022, a telephone conference was held before me. (3/25/22 Tr., ECF No. 82.) During the conference, Plaintiff's counsel stated that he was "not personally equipped to answer" the Court's questions regarding the ETS and "certainly wouldn't be the one that could best explain it" to the Court. (*See id*. at 15-16.) Thus, I ordered Plaintiff to show cause in writing, no later than April 8, 2022, why the work product doctrine and/or attorney-client privilege protects from disclosure to Defendant the column labeled "NOTES" in the ETS. (*See id*. at 16-21; 3/25/22 Order, ECF No. 81, ¶ 1.) In addition, Plaintiff was ordered to include in his written submissions (a) why Defendant should not be provided the NOTES columns from those line entries in the ETS that contain references to "Cargill," and (b) why Defendant should not be advised which lines in the ETS contain any content in the "NOTES" column. (3/25/22 Order ¶ 1.) In the March 25 Order, Plaintiff was given permission to redact from his publicly-filed submissions any information he reasonably believed would disclose information protected by the work product doctrine and/or attorney-client privilege. (*See id*. ¶ 4.)

In response to the Order to show cause, on April 8, 2022, Plaintiff filed the Declaration of Jonathan Feldman ("Feldman") and a memorandum of law, both in redacted form and, under seal, in unredacted form. (*See* Feldman Decl., ECF Nos. 87 & 89; Pl.'s 4/8/22 Mem., ECF Nos. 86 & 88.)[1] In his Declaration, Feldman stated that he is a name partner at Phang Feldman, PA, which acts as general counsel to Plaintiff in the assignment for benefit of creditors proceeding pending

---

[1] The redactions made to the Feldman Declaration and the memorandum of law do not completely align. For example, while paragraphs 6 through 10 of the Feldman Declaration are fully redacted, portions of those paragraphs are disclosed in the publicly filed versions of Plaintiff's memorandum. (*Compare* redacted Feldman Decl., ECF No. 87, ¶¶ 6-10 *with* redacted Pl.'s 4/8/22 Mem., ECF No. 86, at 2-3.) As set forth in the Conclusion below, the Court directs Plaintiff to file a revised, redacted version of the Feldman Declaration that discloses those portions of the Declaration that are publicly addressed in ECF No. 86.

in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in the action styled *In re: Coex Coffee International, Inc. v. Philip von Kahle*, Case No. 20-014293 CA 10, and that he is the attorney at the firm primarily responsible for the representation. (Feldman Decl. ¶¶ 1-2.) Feldman also is co-counsel for Plaintiff in this action. (*Id*. ¶ 2.)

Feldman explained in his Declaration that schedules provided by Coex Miami to Plaintiff after the assignment identified a $93,101,166.91 deficit owed to secured creditors on the company's balance sheet. (Feldman Decl. ¶ 5.) This led Feldman to believe that fraudulent activity at Coex Miami was likely based on his extensive experience administering insolvent estates based in financial frauds. (*Id*. ¶¶ 4, 6.) Feldman's suspicion was confirmed when certain secured creditors presented competing secured claims for the same bags of coffee, or for bags of coffee that did not exist. (*Id*. ¶ 6.) In light of the nature of the secured debts (asset-based lending facilities) and the large shortfall in assets to secure that indebtedness, Feldman concluded that it was a virtual certainty that the assignee would face litigation on at least two fronts: (1) litigation among secured creditors for competing assets, and (2) fraudulent transactions or transfers. (*Id*. ¶¶ 7-9.) One of the reasons Feldman sought and received permission from the assignment court to retain Moecker as a financial advisor was because litigation was likely. (*Id*. ¶ 10.)

Plaintiff's memorandum of law states that the ETS prepared by Moecker contains 67,330 lines of financial transactions conducted by Coex Miami. (Pl.'s 4/8/22 Mem. at 3.) Columns A through K display typical "flow of funds" data taken from financial records. (*Id*.) Plaintiff stated that he redacted Column L because Moecker used that column to compile their analysis of the flow of funds per Feldman's instructions. (*Id*.) In total, Moecker entered notes in 25,450 lines of the ETS. (*Id*.)

With respect to the purchase orders associated with the fraudulent transactions alleged in the Amended Complaint, which were referred to by the Court during the March 25 conference, Plaintiff stated that "the documents the Court was referencing – all 90 of the loan requests and every corresponding fabricated purchase order – were previously produced to Cargill on February 14, 2022 in a folder unambiguously labeled 'Loan Requests with POs,' arranged chronologically for each of the five victim banks." (Pl.'s 4/8/22 Mem. at 4 (citing Feldman Decl. ¶¶ 14-17).)

On April 15, 2022, Cargill filed its response. (*See* Def.'s 4/15/22 Mem., ECF No. 90.) Cargill contends that Moecker would have created the "NOTES" column even if litigation were not contemplated and, thus, that the work product doctrine does not apply. (*See id*. at 5-7.) Cargill further contends that, even if the work product doctrine applies, it has a substantial need for the information redacted because of the hardships associated with Cargill obtaining the equivalent information from the documents and data produced by Plaintiff. (*See id*. at 8-10.) On April 22, 2022, Plaintiff filed his reply. (Pl.'s 4/22/22 Reply, ECF No. 92.)

## **LEGAL STANDARDS**

"Federal law governs the applicability of the work-product doctrine in all actions in federal court." *Wultz v. Bank of China Ltd*., 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (citing *Allied Irish Banks, P.L.C. v. Bank of Am., N.A*., 252 F.R.D. 163, 173 (S.D.N.Y. 2008)). Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless "the party shows that it has substantial need for the materials to prepare its

5

case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).

The work product doctrine is designed "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). The doctrine protects factual material, "including the result of a factual investigation" — commonly referred to as fact work product — as well as material that "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative'" — commonly referred to as opinion work product. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). The party asserting work product protection must demonstrate that the material at issue "(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Allied Irish Banks, P.L.C.*, 252 F.R.D. at 173 (internal quotation marks and citation omitted).

"The Second Circuit has interpreted the 'in anticipation of litigation' requirement broadly." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 105, 108 (S.D.N.Y. 2000). "In anticipation of litigation" means that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Adlman*, 134 F.3d at 1202 (citation omitted). Thus, even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the" documents, *id*. at 1204, or that "such documents might also help in preparation for litigation," *id*. at 1202, work product protection is

case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).

The work product doctrine is designed "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). The doctrine protects factual material, "including the result of a factual investigation" — commonly referred to as fact work product — as well as material that "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative'" — commonly referred to as opinion work product. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). The party asserting work product protection must demonstrate that the material at issue "(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Allied Irish Banks, P.L.C.*, 252 F.R.D. at 173 (internal quotation marks and citation omitted).

"The Second Circuit has interpreted the 'in anticipation of litigation' requirement broadly." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 105, 108 (S.D.N.Y. 2000). "In anticipation of litigation" means that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Adlman*, 134 F.3d at 1202 (citation omitted). Thus, even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the" documents, *id*. at 1204, or that "such documents might also help in preparation for litigation," *id*. at 1202, work product protection is

not available for "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." *Id*.

## DISCUSSION

Based upon its careful review of the parties' submissions, including the unredacted version of the Feldman Declaration, as well as the unredacted version of the ETS, the Court finds that Plaintiff has met his burden of establishing that he is entitled to work product protection for the "NOTES" column of the ETS. The Court finds that the "NOTES" column was prepared by Moecker at the request of Feldman because of the prospect of litigation, thus meeting the requirements for the work product doctrine to apply.[2] *See Allied Irish Banks, P.L.C.*, 252 F.R.D. at 173.

In addition, the Court finds that Cargill has failed to show that it has a substantial need for the information contained in the "NOTES" column to prepare its case and cannot, without undue hardship, obtain the substantial equivalent by other means. Plaintiff has produced to Cargill the documents from which the "NOTES" column was derived, and has produced indices to such documents. Thus, Cargill can obtain substantially equivalent information itself by reviewing the documents produced. The fact that Cargill could save time and money if it had access to Moecker's notes[3] does not satisfy the undue hardship requirement of Rule 26(b)(3). *See Pine Top*

---

[2] Cargill's argument that Plaintiff, due to his statutory duties, would have prepared the "NOTES" column even if litigation were not contemplated (Def.'s 4/15/22 Mem. at 5-7), is unpersuasive. As Plaintiff argues in his reply (Pl.'s 4/22/22 Reply at 2), the "NOTES" do not lose their protected status because they can be used outside of litigation. *See Patel v. L-3 Commc'ns Holdings, Inc.*, No. 14-CV-06038 (VEC), 2016 WL 4030704, at *3 (S.D.N.Y. July 25, 2016) ("work product protection applies even when documents are created for multiple purposes").

[3] Cargill argues that "[t]he [notes] in the ETS would allow Cargill to more effectively and efficiently use the indices produced by Plaintiff to locate responsive documents." (Def.'s 4/15/22 Mem. at 9.)

7

*Ins. Co., v. Alexander & Alexander Servs., Inc.*, No. 85-CV-09860 (PNL), 1991 WL 221061, at *2 (S.D.N.Y. Oct. 7, 1991) ("The undue hardship test is generally not satisfied merely by the expense of obtaining the materials."); *accord Garnier v. Illinois Tool Works, Inc.*, No. 04-CV-01825 (NGG) (KAM), 2006 WL 1211201, at *2 (E.D.N.Y. May 4, 2006).[4]

### CONCLUSION

By reason of the foregoing, Plaintiff need not produce to Defendant an unredacted version of the ETS, since it is protected by the work product doctrine. This resolves the gavels at ECF Nos. 74 and 78.

No later than April 29, 2022, Plaintiff shall file to the ECF docket a revised, redacted version of the Feldman Declaration that discloses those portions of the Declaration that are publicly addressed in ECF No. 86. No later than May 2, 2022, the parties shall submit a joint proposed discovery schedule, or if the parties cannot agree, the parties' respective proposals regarding such schedule.

**SO ORDERED.**

Dated:     New York, New York
           April 24, 2022

_____
STEWART D. AARON
United States Magistrate Judge

---

[4] Because the Court finds that Plaintiff is entitled to fact work product protection, and that Cargill has failed to show that it has a substantial need for the withheld information and that it is unable obtain substantially equivalent information by other means, the Court need not, and does not, address whether the subject information constitutes opinion work product and/or is protected by the attorney-client privilege.