```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/9/2023__
```

PHILIP VON KAHLE, in his capacity
as assignee for the benefit of the creditors
of COEX COFFEE INTERNATIONAL, INC.,

              Plaintiff,

-against-

CARGILL, INC.,

              Defendant.

21 Civ. 8532 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Philip von Kahle, in his capacity as assignee for the benefit of the creditors of Coex Coffee International, Inc. ("Coex Miami"), brings this action against Defendant, Cargill, Inc., seeking to avoid three limited guarantees between Coex Miami and Cargill and to avoid and recover more than $91.5 million in transfers from Coex Miami to Cargill under state law causes of action for actual and constructive fraud in New York or Florida. Am. Compl. ¶¶ 8, 147–81, ECF No. 26. Cargill moves to dismiss all of Plaintiff's claims, arguing primarily that Plaintiff's claims are preempted by federal bankruptcy law, 11 U.S.C. § 546(g), and, in the alternative, that certain claims are barred by the statute of repose under Florida law or that Plaintiff lacks standing under New York law. ECF No. 49; *see* Def. Mem. at 1–2, ECF No. 60. For the reasons stated below, Cargill's motion is GRANTED in part and DENIED in part.

**BACKGROUND**[1]

I.     Factual Background

Coex Miami was a coffee company that sourced coffee beans from growers around the world and sold that coffee to suppliers like Keurig and Starbucks. Am. Compl. ¶ 18. To finance its

---

[1] The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

operations, Coex Miami relied on lines of credit from institutional lenders and used this financing to purchase coffee from overseas, ship and store coffee inventory, and sell coffee to third parties. *Id.* ¶ 20. When Coex Miami contracted to purchase coffee from a supplier, it frequently would request an advance from its lenders to pay for coffee that was not ready to ship. *Id.* ¶¶ 21–22. As part of its business, Coex Miami also conducted derivative trades with Cargill to hedge against fluctuations in the price of coffee. *Id.* ¶ 23.

Between December 29, 2015, and May 29, 2020, Coex Miami submitted "fictitious" loan requests to lenders to induce them to advance nearly $90 million. Am. Compl. ¶¶ 38–39, 42–49. Coex Miami transferred the advanced funds directly to Cargill as payment for the trading losses of Corporación Coex, Inc. ("Coex Panama"). *Id.* ¶¶ 5, 39. Coex Panama is a Panamanian corporation owned by Raul Alvarez and Alfredo Romero, who are the brothers of Ernesto Alvarez and Ernesto Romero, respectively, the owners of Coex Miami. *Id.* ¶¶ 3, 24–25. However, Coex Miami and Coex Panama are distinct corporate entities with no common ownership. *Id.* ¶ 3.

In addition, Coex Miami and Cargill agreed to three limited guarantees, dated April 1 and December 15, 2016, and January 8, 2020. Am. Compl. ¶¶ 54–62. The guarantees obligated Coex Miami to pay a specified amount of Coex Panama's future losses, although Coex Miami received no consideration or equivalent value in exchange for the obligation. *Id.* ¶ 6. Further, Coex Miami paid Cargill over $76.8 million more than required by the three limited guarantees. *Id.* ¶¶ 72, 85. Because of its large debt, lower corresponding revenue, and lack of liquidity, Coex Miami appears to have been insolvent since at least 2014. *Id.* ¶¶ 97, 100.

II. <u>Procedural History</u>

On July 2, 2020, Coex Miami voluntarily executed an assignment for the benefit of creditors under Florida's assignment statute, Chapter 727, which assigned all Coex Miami's assets to Plaintiff to be liquidated for the benefit of creditors. Am. Compl. ¶¶ 1, 11–12. On July 7, 2020, Plaintiff

initiated a Florida assignment of benefits proceeding (the "ABC Proceeding"). *Id.* ¶¶ 12, 124. Over sixty Coex Miami creditors have since filed claims against the assignment estate seeking to recover more than $220 million. *Id.* ¶ 1.

A year later, on July 1, 2021, Plaintiff, in his capacity as assignee for the benefit of the creditors of Coex Miami, filed a lawsuit against Cargill in Florida state court, alleging causes of action against Cargill under state law theories of breach of fiduciary duty and fraudulent transfer. *Id.* ¶ 145. On September 15, 2021, Cargill moved to dismiss the Florida lawsuit based on a mandatory forum selection clause in the limited guarantees' choice of law provisions, which provided that all claims be heard in New York federal court. *Id.* ¶¶ 16, 146. On October 1, 2021, the Florida state court granted Cargill's motion to dismiss. *Id.* ¶ 146.

On October 15, 2023, Plaintiff filed the instant action, seeking to avoid the three limited guarantees and to avoid and recover over $91.5 million in transfers from Coex Miami to Cargill based on state law causes of action for actual and constructive fraud under New York law or, in the alternative, Florida law. Am. Compl. ¶¶ 2, 8, 147–81. On January 31, 2022, Cargill filed a motion to dismiss the amended complaint, arguing that Plaintiff's claims are preempted by federal bankruptcy law, 11 U.S.C. § 546(g), and, in the alternative, that certain claims are barred by the statute of repose under Florida law or that Plaintiff lacks standing under New York law. ECF No. 49; *see* Def. Mem. at 1–2. On February 22, 2022, the International Swaps and Derivatives Association and the Futures Industry Association filed an amicus curiae brief in support of Cargill's motion to dismiss. ECF No. 70.

On September 7, 2022, the Court stayed the case, held that Plaintiff's claims are properly brought under Florida law, and ordered Cargill to notify the attorney general of Florida of its preemption argument pursuant to Federal Rule of Civil Procedure 5.1 (the "September 2022 Order"). ECF No. 114 at 3–4. By email and letter dated November 17, 2022, the attorney general of Florida

3

advised the Court that it "w[ould] not be intervening in this matter" but nonetheless "would like to note that the office disagrees with . . . Cargill's assertion that federal bankruptcy law completely preempts state law claims, such as a fraud claim, arising out of a state insolvency proceeding." *See* ECF No. 117.

## DISCUSSION

### I. Preemption

#### A. Legal Standard

The Supremacy Clause, Article VI, Clause 2 of the United States Constitution, provides that federal law prevails when it conflicts with state law. *See Arizona v. United States*, 567 U.S. 387, 399 (2012). Section 546(g) of the Bankruptcy Code states:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B) and 548(b) of this title, the trustee may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection with any swap agreement and that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(g). Cargill argues that Plaintiff's state law claims fail as a matter of law because they are preempted by § 546(g) under the doctrines of implied preemption and field preemption.

Under the implied preemption doctrine, state law is preempted "to the extent of any conflict with a federal statute." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (citations omitted). "Such a conflict occurs when compliance with both federal and state regulations is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations and quotation marks omitted). The "mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006) (quotation marks omitted). Courts start with the presumption that state laws are not preempted by federal law unless that was the "clear and manifest purpose of Congress." *In re Methyl Tertiary Butyl Ether*

4

*(MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) (citation omitted).  Therefore, "the party asserting that federal law preempts state law bears the burden of establishing preemption."  *Id.*

Field preemption occurs where there has been a "congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards."  *Arizona*, 567 U.S. at 401.  The basic premise of field preemption is that "[s]tates may not enter, in any respect, an area the [f]ederal Government has reserved for itself."  *Id.* at 402.  Accordingly, "[i]n rare cases, the [Supreme] Court has found that Congress legislated so comprehensively in a particular field that it left no room for supplementary state legislation."  *Kansas v. Garcia*, 140 S. Ct. 791, 804 (2020) (citation and quotation marks omitted).

### B.  Analysis

Plaintiff does not dispute that his claims would be preempted if Coex Miami were subject to a federal bankruptcy.  *See generally* Pl. Opp. at 8–22, ECF No. 65.  Rather, Plaintiff argues that the Bankruptcy Code's preemption provisions are inapplicable because Coex Miami is not and has never been subject to a federal bankruptcy proceeding.  *Id.* at 8.  In response, Cargill argues that the Florida ABC Proceeding is the "functional equivalent" of a federal bankruptcy, and, therefore, implied preemption applies because Plaintiff's state law claims stand as an obstacle to federal law and congressional intent.  Def. Reply at 1, ECF No. 72.

Cargill's implied preemption argument, "like all preemption arguments, must be grounded in the text and structure of the statute at issue."  *Kansas*, 140 S. Ct. at 804 (citation and quotation marks omitted).  The plain text of § 546(g) makes clear that the provision only applies to a federal bankruptcy trustee:  "[T]he *trustee* may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection with any swap agreement and that is made before the commencement of the case[.]"  11 U.S.C. § 546(g) (emphasis added).  Here, Plaintiff is not a federal bankruptcy trustee, but rather an assignee created under state law.

Second Circuit caselaw further supports that implied preemption occurs at the initiation of Chapter 11 bankruptcy proceedings. In *In re Tribune Co. Fraudulent Conveyance Litigation*, the Second Circuit explained that "[o]nce a party enters bankruptcy, the Bankruptcy Code constitutes a wholesale preemption of state laws regarding creditors' rights." 946 F.3d 66, 82 (2d Cir. 2019). There, the Second Circuit held that the creditors' "state law claims were preempted when the Chapter 11 proceedings commenced and were not dismissed." *Id.* at 83. Likewise, in *Whyte v. Barclays Bank PLC*, the Second Circuit affirmed the district court's holding that where "creditors' claims are assigned . . . to a litigation trust organized pursuant to a Chapter 11 plan, the [§] 546(g) 'safe harbor' impliedly preempts state-law fraudulent conveyance actions seeking to avoid 'swap transactions.'" 494 B.R. 196, 199 (S.D.N.Y. 2013), *aff'd*, 644 F. App'x 60 (2d Cir. 2016). The Second Circuit has made clear that the filing of a federal bankruptcy case—not a state insolvency proceeding—triggers the preemption analysis. Because the ABC Proceeding is not a bankruptcy case, federal bankruptcy law, including § 546(g), does not apply.

The Court also rejects Cargill's argument that Plaintiff's state law claims are impliedly preempted because they "stand as an obstacle to the accomplishment of Congress's purpose." Def. Mem. at 10 (emphasis omitted). Cargill argues that the ABC Proceeding is the "functional equivalent" of a bankruptcy proceeding, so the same congressional concerns present in a federal bankruptcy proceeding are present here. *Id.* at 10–14. But, Cargill does not point to any evidence that Congress intended to extend the Bankruptcy Code's preemption to cover state insolvency proceedings. The ABC Proceeding is not a federal Chapter 11 bankruptcy; it is a "state-law alternative to bankruptcy." *In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11th Cir. 2015). Indeed, the Eleventh Circuit has affirmed that Florida "ABCs and bankruptcies are alternative proceedings. An entity deliberately chooses to pursue one or the other." *Id.* "Entities may opt to use the ABC process because, in their particular circumstance, it[ i]s more flexible, faster, more private, and less

supervised than bankruptcy." *Id.* Congress regularly treats federal and state laws differently where those laws serve different purposes. *See In re Methyl*, 725 F.3d at 101 ("A showing that the federal and state laws serve different purposes cuts against a finding of obstacle preemption.").

For similar reasons, field preemption is likewise inapplicable. Cargill argues that the Bankruptcy Code, along with the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), "occupy the field" of "when transfers and obligations in connection with swap agreements can be avoided as fraudulent transfers" such that state avoidance claims are preempted. Def. Mem. at 16 (alterations omitted). But, swap agreements have long been governed by state law and continue to be governed by state law after the Dodd-Frank Act. *See, e.g.*, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F. Supp. 3d 610, 617 (S.D.N.Y. 2018); *see also BFP v. Resol. Trust Corp.*, 511 U.S. 531, 540–41 (1994). Cargill does not point to any evidence that there has been a "congressional decision to foreclose any state regulation in the area," *Arizona*, 567 U.S. at 401, or that the "[f]ederal Government has reserved for itself" the field of swap agreements, *id.* at 402. Nor does Cargill cite any case holding that the Bankruptcy Code and Dodd-Frank Act preempt all state law avoidance claims related to swap agreements. *See* Def. Mem. at 14–16.

And, for the reasons discussed above, the Bankruptcy Act does not exclusively occupy the field of "debtors' affairs and creditors' rights," *id.* at 14, because federal courts have repeatedly recognized that state insolvency proceedings exist as an alternative to the federal bankruptcy system. *See, e.g.*, *In re Nica Holdings*, 810 F.3d at 789; *Ready Fixtures Co. v. Stevens Cabinets*, 488 F. Supp. 2d 787, 791 (W.D. Wis. 2007).

Accordingly, Cargill's motion to dismiss Plaintiff's claims as preempted is DENIED.

II.   Florida Statute of Repose

For the reasons stated in the September 2022 Order, under New York choice-of-law rules, Florida law applies to Plaintiff's claims. *See* ECF No. 114 at 3–4. Applying Florida law, Cargill

argues that Florida's statute of repose bars Plaintiff's claims based on transfers made and obligations entered before July 1, 2017.  Def. Mem. at 16–17.  Section 726.110 of the Florida Statutes provides:

> A cause of action with respect to a fraudulent transfer or obligation under ss. 726.101-726.112 is extinguished unless action is brought: (1) [For actual fraud], within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) [For constructive fraud], within 4 years after the transfer was made or the obligation was incurred[.]

Fla. Stat. Ann. § 726.110.  Plaintiff concedes that under Florida law, his constructive fraud claims that predate July 1, 2017 (four years before Plaintiff filed his complaint in Florida court), are untimely; however, he argues that all his claims alleging actual fraud are timely because they fall within the one-year "savings clause."  Pl. Opp. at 26–27.

The Court agrees with Plaintiff that his claims alleging intentionally fraudulent obligation or transfers are timely because they were brought "within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant."  Fla. Stat. Ann. § 726.110(1).  The plain text of the statute makes clear that the one-year savings clause is triggered when the claimant—here, Plaintiff—"discovered" or "could reasonably have . . . discovered" the transfers.  *Id.*  Coex Miami voluntarily executed an assignment for the benefit of creditors on July 2, 2020, and Plaintiff filed his complaint in Florida court on July 1, 2021.  Am. Compl. ¶¶ 11–12, 145.

Cargill argues that the savings clause does not apply because "both Coex Miami and the creditors purportedly defrauded were aware of the transfers when they were made."  Def. Reply at 14.  First, the Court rejects Cargill's argument that Plaintiff, as the assignee, "stands in the shoes of the assignor," Coex Miami.  *Akin Bay Co., LLC v. Von Kahle*, 180 So. 3d 1180, 1182 (Fla. Dist. Ct. App. 2015); Def. Mem. at 19.  Under § 727.108(1)(b) of the Florida Statutes, "[i]n an action in any court by the assignee . . . against a defendant to assert a claim . . . , the claim is not subject to, and any remedy may not be limited by, a defense based on the assignor's acquiescence, cooperation, or

8

participation in the wrongful act by the defendant which forms the basis of the claim." Fla. Stat. Ann. § 727.108(1)(b). Because Coex Miami's "participation in the wrongful act" cannot limit Plaintiff's ability to raise his claims, this serves as an "exception" to the general rule that the assignee stands in the shoes of the assignor. *Akin Bay*, 180 So. 3d at 1182 & n.3 (listing "minor exceptions," including § 727.108(1)(b)).

Second, as to the creditors' purported knowledge of the transfers, Cargill does not provide authority for the proposition that the knowledge of some creditors can be imputed to Plaintiff for the purpose of calculating the one-year savings clause. *See* Def. Mem. at 19. To do so would run contrary to the plain text of the statute. *See* Fla. Stat. Ann. § 726.110(1). The Court finds, therefore, that Plaintiff's constructive fraud claims that predate July 1, 2017, are untimely, but his actual fraud claims are timely because they were brought within one year of when they "could reasonably have been discovered by" Plaintiff. *Id.*

Accordingly, Cargill's motion to dismiss Plaintiff's claims as untimely under Florida law is GRANTED as to Plaintiff's constructive fraud claims that predate July 1, 2017, and DENIED as to the remainder of his claims.

## CONCLUSION

For the reasons stated above, Cargill's motion to dismiss is GRANTED in part and DENIED in part. Cargill's motion to dismiss Plaintiff's constructive fraud claims that predate July 1, 2017, is GRANTED, and its motion to dismiss the remainder of Plaintiff's claims is DENIED.

The Clerk of Court is directed to terminate the stay and the motion at ECF No. 49.

SO ORDERED.

Dated: May 9, 2023
New York, New York

_____
ANALISA TORRES
United States District Judge