# STEARNS WEAVER MILLER
# WEISSLER ALHADEFF & SITTERSON, P.A.

Jason P. Hernandez
150 West Flagler Street, Suite 2200
Miami, FL 33130
Direct: (305) 789-3455
Fax: (305) 789-2685
Email: jhernandez@stearnsweaver.com

February 16, 2024

**BY CM/ECF FILING**
Honorable Analisa Torres
United States District Court for
the Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Philip von Kahle (as Assignee) v. Cargill, Inc.*, No. 21-CV-08532 – Plaintiff's Pre-Motion Letter Requesting Leave to File Motion for Summary Judgment

Dear Judge Torres:

      Plaintiff Philip von Kahle ("Plaintiff"), as assignee for the benefit of the creditors of Coex Coffee International, Inc. ("Coex Miami"), submits this letter pursuant to Section III.C of Your Honor's Individual Practices to explain why good cause exists to permit Plaintiff to file a partial motion for summary judgment in a non-jury case.

      This is a case about a clear-cut, intentional fraud totaling $89,583,153.96. Evidence of the fraud includes: (*i*) emails in which the fraud's architects lay out and execute the scheme; (*ii*) the creation of scores of dummy purchase orders that were used to dupe Coex Miami's lenders; and (*iii*) false representations to Coex Miami's auditor to conceal corporate guarantees and transfers made for the benefit of a corporation owned and controlled by Coex Miami's principals' family members. The proof is so compelling that two of the founding members of the fraud (wisely) invoked their Fifth Amendment right against compelled self-incrimination hundreds of times in their depositions when confronted with the undeniable truth.

      Indeed, the evidence "point[s] to only one logical conclusion" – that Coex Miami intentionally defrauded its creditors. Accordingly, Plaintiff is entitled to a judgment as a matter of law on Counts I & III of the First Amended Complaint (the "actual fraud" counts). If granted, Plaintiff's partial motion for summary judgment will "parse out those issues that need not go to trial thereby conserving judicial resources" and will "focus the litigants and the Court on the central issues in a lawsuit[,]" which are Cargill's affirmative defenses. *In re United Brands Co. Sec. Litig.*, No. 85 CIV. 5445 (JFK), 1988 WL 67413, at *2 (S.D.N.Y. June 20, 1988).

# BACKGROUND

The material, uncontroverted facts for purposes of the motion are as follows.[1] Coex Miami transferred $89,583,153.96 to Cargill, a limited designation swap dealer, to pay for swaps-related settlements and margin calls made by Cargill on a separate Panamanian company called Corporación Coex, Inc. ("Coex Panama"). (Pl.'s 56.1 Stmt., ¶¶ 115-744). Although the companies have no legal relationship, Coex Panama was owned and controlled by family members of Coex Miami's principals. (*Id*. ¶¶ 23-27, 28, 34-36). Coex Miami also entered into three limited corporate guarantees with Cargill, guaranteeing Coex Panama's debts to Cargill. (*Id*. ¶¶ 53-58).

The nearly $90 million in transfers came from five banks that extended revolving lines of credit to Coex Miami. The agreements between Coex Miami and four of the five banks stated, in sum and substance, that Coex Miami could only draw money against the lines to buy physical coffee. (*Id*. ¶¶ 12-15). The agreement with the fifth bank required Coed Miami to identify "the use or uses which will be made of the funds requested" and that those funds "be used only for the purposes specified in its corresponding Advance Request." (*Id*. ¶ 16).

All 90 transfers were supported by pre-export advance requests from Coex Miami to one of the five banks with an accompanying purchase order (or similar document) purporting to show that the funds, if advanced, would be used to by physical coffee. (*Id*. ¶¶ 115-744). None of the $89,583,153.96 in transfers went to buy coffee, however; it all went to Cargill, which neither sold nor delivered any coffee to Coex Miami. (*Id*. ¶¶ 51-52). Instead, Cargill applied all 90 transfers totaling $89,583,153.96 to *Coex Panama's* swaps collateral account to settle Coex Panama's debts to Cargill. (*Id*. ¶¶ 115-744).

Coex Miami's internal emails lay bare the fraud's origin. When Coex Panama faced a demand for payment from Cargill in December 2015 to cover trading losses, the demand was forwarded to Coex Miami's Chief Financial Officer, Luis Garcia. (*Id*. ¶ 62). Garcia responded that "we'll be covering the margin" but asked for an "address because we need to create contracts internally to process the transactions." (*Id*.) On December 28, 2015, Ernesto Alvarez, Coex Miami's Chief Executive Officer, alerted Coex Panama's principals that "Mr. Garcia is going to call you and ask for some 'invoices' so that we can close out our year. I will also be doing another transaction with Cargill (Corp.). He will explain it to you." (*Id*. ¶ 63).

Garcia later provided Coex Panama with two purchase order numbers, asking they "[s]end only those invoices with the necessary shipping information and with the payment instructions to Cargill – Corporación Coex." (*Id*. ¶ 64). Coex Miami sent the fraudulent purchase orders to lender Bank Leumi, which advanced Coex Miami a total of $4,945,565.63 on December 29, 2015 based on the representation that the funds were for the purchase of physical coffee. (*Id*. ¶¶ 115-128). Coex Miami then transferred the funds to Cargill, which applied the funds to Coex

---

[1] Due to space limitations in this letter, Plaintiff cannot recite all of the uncontroverted facts that would support granting summary judgment on Counts I & III.

February 16, 2024
Page 3

Panama's account. Coex Miami repeated this fraud 88 more times for a total of $89,583,153.96. (*Id*. ¶¶ 129-744).

On multiple occasions, Coex Miami falsely represented to their auditors that: (*i*) it had not entered into any guarantees, even though it had granted Cargill three guarantees; (*ii*) it was in compliance with its bank covenants, when it had breached those covenants by lying to five banks about how advances would be used; and (*iii*) it had "no knowledge of any [] [f]raud or suspected fraud involving management." (*Id*. ¶¶ 792-98). Coex Miami also falsely recorded the fraudulent transfers to Cargill in Coex Miami's books and records as legitimate coffee purchases to deceive its auditor and creditors. (*Id*. ¶¶ 787-89).

### **Plaintiff is Entitled to Summary Judgment on Counts I and III**

Plaintiff is entitled to judgment as a matter of law on Counts I and III of the First Amended Complaint. Both Counts allege that the respective obligation or transfer was actually fraudulent, which is to say that they were made with "actual intent to hinder, delay, or defraud any creditor of the debtor [i.e., Coex Miami]."[2] *See* Fla. Stat. § 726.105(1)(a). A "creditor may prove a fraudulent conveyance by establishing a prima facie case that is unrebutted, or by demonstrating actual fraudulent intent." *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 153 (Fla. 4th DCA 1994). Where "the uncontradicted facts [] point to only one logical conclusion— that the transfer was fraudulent" – which is the case here – summary judgment is appropriate. *Id.*

**Coex Miami has (and had) Creditors to be Defrauded.** The first element of a claim to avoid and recover an actually fraudulent transfer is that "there was a creditor to be defrauded," whether existing or future. *Wiand v. Lee*, 753 F.3d 1194, 1199 (11th Cir. 2014); Fla. Stat. § 726.105(1). This element is easily satisfied. Not only have 66 creditors filed proofs of claim against Coex Miami in insolvency proceedings in Florida state court, (Pl.'s 56.1 Stmt. ¶¶ 843-45), every pre-export advance was between Coex Miami and one of its creditor banks.

**Coex Miami Intended Fraud.** The second element of an actual fraud claim is "a debtor intending fraud[,]" *Wiand*, 753 F.3d at 1200, which can be established by "direct proof," *see Mane FL Corp. v. Beckman*, 355 So. 3d 418, 42 (Fla. 4th DCA 2023), or by a non-exhaustive statutory list of "badges of fraud," Fla. Stat. § 726.105(2). This is the rare case where the evidence of fraud is so strong that Plaintiff can establish both methods when it only needs one.

***Direct Proof.*** There is uncontroverted, direct proof from Coex Miami's principals that they intended to defraud Coex Miami's creditors. Emails between Coex Miami's principals and Coex Panama's principals unmistakably show that they intentionally created sham purchase orders to submit to Coex Miami's lenders to induce them to advance funds to Coex Miami, which in turn transferred the funds to Cargill, for the satisfaction of Coex Panama's debts to Cargill. This is *direct proof* of fraudulent intent and courts applying FUFTA have had no trouble

---

[2] The Florida Uniform Fraudulent Transfer Act ("FUFTA") is the applicable law. *See* Fla. Stat. § 726.101, *et seq*.

February 16, 2024
Page 4

finding fraudulent intent in similar circumstances, where "false bills of lading were produced to document shipments that never occurred." *In re PSI Indus., Inc.*, 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003).

When confronted with these highly incriminating emails, Alvarez and Garcia took the Fifth, which has two implications. (Pl.'s 56.1 Stmt., *e.g.* ¶¶ 748-72). *First*, because Alvarez and Garcia are <u>not talking</u>, there is no factual dispute that requires resolution by trial. *Second*, Alvarez and Garcia's invocation of their 5th Amendment privilege gives rise to an adverse inference that supports a finding of fraud.[3] *See Libutti v. United States*, 107 F.3d 110, 120 (2d Cir. 1997) (holding that an adverse inference can be drawn against a party based on a third-party's refusal to testify).

**Badges of Fraud.** FUFTA provides a list of "badges of fraud" that are "indicators of actual fraudulent intent." *In re Rollaguard Sec., LLC*, 570 B.R. 859, 878 (Bankr. S.D. Fla. 2017); *see* Fla. Stat. § 726.105(2). The statutory list is non-exhaustive and "consideration may be given to factors other than those listed" and to "the circumstances surrounding the conveyance." *Wiand*, 753 F.3d at 1200. "Two or three badges can be enough to support a finding of actual intent to defraud." *Mane*, 355 So. 3d at 426. "The existence of badges of fraud creates a prima facie case, thereby raising a rebuttable presumption that the transaction is void." *Id.*

Here, the material, undisputed facts support *at least* three enumerated badges of fraud and several further compelling indicia. *First*, the transfers were for the benefit of "an insider." *See* Fla. Stat. § 726. 105(2)(a); *id*. § 726. 102(8)(b)(6) (an "insider" is "[a] relative of a general partner, director, officer, or person in control of the debtor"). *Second*, the transfers and limited guarantees were "concealed" from Coex Miami's auditor and creditors. *Id*. § 726. 105(2)(c); (Pl.'s 56.1 Stmt. ¶¶ 792-94). And *third*, the "transfer occurred shortly before or shortly after a substantial debt was incurred" because each limited guarantee transfer was precipitated by the incurrence of a substantial debt to one of Coex Miami's creditors. *Id*. § 726. 105(2)(j).

**Coex Miami Delayed, Hindered, or Defrauded its Creditors.** The third and final element is that Coex Miami's actions "delayed, hindered, or defrauded its creditors." Fla. Stat. § 726.105(1)(a). This element is met when there has been a "conveyance of property that could have been applicable to the payment of the debt due[,]" *Wiand*, 753 F.3d at 1199, or through an "obligation incurred by a debtor[,]" Fla. Stat. § 726.105(1). The question is whether the debtor has "relinquished some interest" in an asset that could have been reached by his creditors. *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1302-03 (11th Cir. 2020). This element is also easily satisfied. When Coex Miami transferred $89,583,153.96 of its money to Cargill, those funds were no longer available to satisfy the debts owed to Coex Miami's creditors, and when executed the limited guarantees, it incurred obligations to Cargill.

---

[3] Even without an adverse inference, nothing in the record rebuts Coex Miami's incriminating emails and neither Alvarez nor Garcia are taking the witness stand to explain them away.

February 16, 2024
Page 5

 

Respectfully submitted,

/s/*Jason P. Hernandez*
Jason P. Hernandez
Stearns Weaver Miller Weissler,
Alhadeff & Sitterson, P.A.
150 West Flagler Street, Suite 2200
Miami, FL 33130
Email: jhernandez@stearnsweaver.com
Phone: 305-789-3455
Fax: 305-789-2685

*Attorneys for Plaintiff Philip Von Kahle*