UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/7/2025_

PHILIP VON KAHLE, in his capacity
as assignee for the benefit of the creditors
of COEX COFFEE INTERNATIONAL, INC.,

                             Plaintiff,

           -against-

CARGILL, INC.,

                            Defendant.

21 Civ. 8532 (AT) (SDA)

**ORDER ADOPTING REPORT AND <u>RECOMMENDATION</u>**

ANALISA TORRES, District Judge:

      Plaintiff, Philip von Kahle, in his capacity as assignee for the benefit of the creditors of Coex Coffee International, Inc. ("Coex Miami"), brings this action against Defendant, Cargill, Inc. ("Cargill"), seeking to recover more than $90 million in actually and constructively fraudulent transfers made from Coex Miami to Cargill and to avoid three limited guarantees between Coex Miami and Cargill. *See generally* Am. Compl., ECF No. 26. The parties cross-moved for partial summary judgment and, pursuant to an order of reference, the Honorable Stewart D. Aaron issued a report (the "R&R") recommending that both motions be denied. ECF Nos. 225, 232, 245; R&R at 1, ECF No. 297. Before the Court are Cargill's timely objections to the R&R.[1] *See* Objs., ECF No. 303; *see also* Resp., ECF No. 304. For the reasons stated below, the Court overrules Cargill's objections and adopts the R&R in full.

---

[1] Plaintiff does not object to the R&R. *See* ECF No. 304 at 1, 21.

# BACKGROUND[2]

I. <u>Factual Background</u>

Coex Miami is a Florida corporation that purchases and sells coffee. Pl. 56.1 Statement ("Pl. 56.1") ¶¶ 1–4, ECF No. 270.[3] During the time relevant to this action, the corporation was owned and operated by principals Ernesto Álvarez and Ernesto Romero. *Id*. ¶¶ 5–9. Coex Miami purchased coffee principally in Latin America, including from Comercial Exportadora, S.A. ("Coex El Salvador"). *Id*. ¶¶ 4, 21. Coex El Salvador is owned by Corporación Coex, Inc. ("Coex Panama"), a holding company. *Id*. ¶¶ 19–21. Coex Panama was owned and operated by principals Raul Álvarez and Alfredo Romero, the respective brothers of Coex Miami's principals.[4] *Id*. ¶¶ 23–27, 34.

Cargill is a global food corporation headquartered in Minnesota. *Id*. ¶ 35. Cargill Risk Management ("CRM"), a division of Cargill, is a registered swap dealer with the Commodity Futures Trading Commission, which allows CRM to transact in agricultural commodity swaps on behalf of Cargill.[5] *Id*. ¶¶ 38–39; Def. 56.1 Statement ("Def. 56.1") ¶ 11, ECF No. 282. Through CRM, Cargill and its customers enter into agricultural swap transactions in which they agree to exchange net cash payments on the swaps' mutually agreed expiration dates based on the price of the underlying agricultural commodities. Def. 56.1 ¶ 12.

In 2013, Coex Miami entered into a Master Agreement with Cargill (the "Coex Miami Master Agreement"), pursuant to which the entities engaged in swap transactions until 2020. Pl.

---

[2] The Court presumes familiarity with the facts and procedural history of this action as detailed in the R&R, *see* R&R at 2–11, and recites only those facts and procedural details relevant to this order.

[3] Citations to a party's Rule 56.1 statement include the opposing party's response.

[4] Coex Panama was also owned by Aracely de Romero, Ernesto Romero's mother. Pl. 56.1 ¶¶ 23, 25, 34.

[5] A swap is a financial derivative contract in which one party pays the other if the price of an underlying commodity moves in a particular direction, and vice versa. Objs. at 1.

56.1 ¶¶ 42, 44.  In 2014, Coex Panama also entered into a Master Agreement with Cargill (the "Coex Panama Master Agreement"), pursuant to which the entities engaged in swap transactions until 2020.  *Id*. ¶¶ 43, 45.  Under the Coex Panama Master Agreement, Cargill was entitled to demand that Coex Panama provide collateral payments to Cargill.  *Id*. ¶ 45.

To ameliorate Cargill's concerns about Coex Panama's financials, Coex Miami entered into three limited guarantees with Cargill (the "Limited Guarantees"), which obligated Coex Miami to honor, up to a specified maximum amount, Coex Panama's obligations under the Coex Panama Master Agreement if Coex Panama failed to satisfy its obligations.  Def. 56.1 ¶¶ 35, 133–34; R&R at 4.  The first limited guarantee was for up to $6,000,000; the second, $9,250,000; and the third, $14,750,000.  Pl. 56.1 ¶¶ 51, 53, 55.  Each of the Limited Guarantees set out as conditions precedent to Coex Miami's satisfaction of Coex Panama's debts that Coex Panama be delinquent on its obligations and that Cargill issue a written demand to Coex Panama and Coex Miami.  Def. 56.1 ¶ 136.

There are two types of transfers at issue in this case: pre-export advance transfers and operating account transfers (together, the "Challenged Transfers").  *See* R&R at 5–6; ECF No. 26-1 (list of transfers).  As to the pre-export advance transfers, Coex Miami had lines of credit with various banks that it used to finance its coffee purchases.  Pl. 56.1 ¶ 11.  To obtain an advance against a line of credit, Coex Miami would need to present invoices from suppliers.  *See id*. ¶¶ 71, 83, 92, 103.  Plaintiff alleges that, from December 2015 to May 2020, Coex Miami used fake invoices to defraud lender banks and draw on its lines of credit to pay Cargill for Coex Panama's obligations.  *See generally* Am. Compl.; ECF No. 26-1.  The ninety pre-export advance transfers made by the banks to Cargill on behalf of Coex Miami totaled $89,583,153.96.  *See* ECF No. 26-1.

As to the operating account transfers, Plaintiff alleges that, in 2016 and 2017, three fraudulent transfers totaling $2,010,014.22 were sent from Coex Miami's Bank of America operating account to Cargill for payment of Coex Panama's obligations. *See* Pl. 56.1 ¶¶ 141–43; ECF No. 26-1; *see generally* Am. Compl. The total amount of the ninety-three Challenged Transfers is about $91.6 million. ECF No. 26-1. Prior to July 2020, Cargill did not make any written demand on Coex Panama or Coex Miami under any of the Limited Guarantees for any amount which Coex Panama had failed to pay. Def. 56.1 ¶¶ 137–38.

II.  Procedural Background

In July 2020, Coex Miami initiated an insolvency proceeding in Florida state court (the "Assignment Proceeding"). *Id.* ¶ 10. Plaintiff is the assignee for the benefit of Coex Miami's creditors. *Id.* In the Assignment Proceeding, Coex Miami assigned its assets to Plaintiff to be liquidated for the creditors' benefit. *Id.*

In November 2021, Plaintiff filed an amended complaint in this action, seeking, under Florida or New York debtor-creditor law, (1) avoidance of the Limited Guarantees as made with actual intent to hinder, delay, or defraud; (2) avoidance of the Limited Guarantees as made without receiving reasonably equivalent value in exchange; (3) avoidance and recovery of transfers made with actual intent to hinder, delay, or defraud; and (4) avoidance and recovery of transfers made without receiving reasonably equivalent value in exchange. *See generally* Am. Compl.

In April 2024, Plaintiff moved for partial summary judgment. ECF No. 232. He seeks summary judgment "adjudicating that . . . the [Challenged Transfers] and [the Limited Guarantees] were actually fraudulent" under the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. § 726.101 *et seq.* Pl. Mem. at 8–9, ECF No. 244. That same month,

Cargill cross-moved for partial summary judgment, seeking a determination that "Coex Miami received reasonably equivalent value for the Challenged Transfers and Limited Guarantees" or, in the alternative, that Plaintiff's damages demand be reduced. Def. Mem. at 25, ECF No. 246; ECF No. 245.

After holding oral argument on both motions, Judge Aaron recommends that they be denied. *See* R&R at 1, 11. The Court discusses the R&R below in connection with Cargill's objections.

## DISCUSSION

I. <u>Legal Standard</u>

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted).

When a party makes specific objections, the Court reviews *de novo* those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, when a party "makes only conclusory or general objections, or simply reiterates the original arguments," the Court reviews the R&R "strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *see also Bailey v. U.S. Citizenship & Immigr. Servs.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings . . . do not trigger *de novo* review."); *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) ("[W]here objections are merely perfunctory responses, argued in an attempt to

5

engage the district court in a rehashing of the same arguments set forth in the original [motion], reviewing courts should review a report and recommendation for clear error." (citation omitted)). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

II.     Cargill's Objections

Cargill raises two categories of objections to the R&R. The Court addresses each in turn.

A. Reasonably Equivalent Value

First, Cargill objects to the R&R's determination that genuine issues of material fact preclude summary judgment as to whether Coex Miami received reasonably equivalent value for the Challenged Transfers. *See* Objs. at 11–21.

The inquiry under FUFTA is whether the debtor, here, Coex Miami, "made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange." *Perlman v. Am. Express Centurion Bank*, No. 19 Civ. 61386, 2021 WL 2598139, at *8 (S.D. Fla. Mar. 31, 2021) (cleaned up) (citation omitted). To determine whether Coex Miami received reasonably equivalent value in exchange for the Challenged Transfers, "the Court must determine the value of what was transferred and compare it to what was received." *In re Mongelluzzi*, 587 B.R. 392, 404 (Bankr. M.D. Fla. 2018). "[T]he totality of the circumstances are examined, including the fair market value of the item or service received compared to the price paid, the arms-length nature of the transaction, and the good faith of the transferee." *Perlman*, 2021 WL 2598139, at *7 (citation omitted). The Court "must assess value on a case-by-case basis looking at the surrounding circumstances and focusing on the precise transfer in question and not on the value of the transfer to the debtor's overall fraudulent enterprise." *Id*.

6

(citation omitted); *see In re World Vision Ent., Inc.*, 275 B.R. 641, 657 (Bankr. M.D. Fla. 2002) (stating that courts must "evaluat[e] . . . the specific consideration exchanged by the debtor and the transferee in the specific transaction that the trustee seeks to avoid" (citation omitted)). Accordingly, "[r]easonably equivalent value, whether analyzed in the actual or constructive fraudulent transfer context, is a question of fact." *Damian v. Bucks of Am., LLC*, No. 21 Civ. 1999, 2023 WL 5769325, at *3 (M.D. Fla. Sept. 7, 2023).

The R&R rejected Cargill's arguments and determined that a genuine issue of material fact exists as to whether Coex Miami received reasonably equivalent value in exchange for the Challenged Transfers. *See* R&R at 28–39. As relevant here, Cargill argued that, as reasonably equivalent value for the Challenged Transfers, Coex Miami received Coex Panama's transfer of approximately $47 million that Cargill returned to Coex Panama as excess collateral or swap settlements. *See id*. at 29–30. Judge Aaron determined that it is unclear whether the $47 million Coex Miami received from Coex Panama was in exchange for the Challenged Transactions. He noted that, despite the familial relationship between the entities' principals, Coex Miami and Coex Panama were separate entities with no parent-subsidiary relationship, and there is "no record evidence describing the terms of any agreement between Coex Panama and Coex Miami to distribute the excess collateral to Coex Miami." *Id*. at 30 (quoting ECF No. 25 at 11–12). Judge Aaron concluded, "[v]iewing the evidence as a whole in the light most favorable to Plaintiff, [that] the issue of whether the excess collateral or swap[] settlements that [Cargill] sent Coex Panama conferred reasonably equivalent value upon Coex Miami is an issue of fact precluding summary judgment." *Id*. Judge Aaron also noted that "no showing has been made with respect to the value [given in exchange for] each individual transfer, as required" by FUFTA. *Id*. at 31; *see Perlman*, 2021 WL 2598139, at *7; *World Vision*, 275 B.R. at 657.

7

Cargill also argued before Judge Aaron that the swap transactions between Coex Panama and Cargill offered price protection to Coex Miami's supply chain by locking in a future price and thus avoiding price fluctuations, thereby conferring a benefit on Coex Miami. *See* R&R at 29, 31. Judge Aaron rejected this argument, concluding that there are genuine issues of material fact as to whether any price protection received by Coex Miami constituted reasonably equivalent value. *See id*. at 31. In doing so, he noted the parties' disagreement over "the degree of the benefit, if any, that hedging coffee prices afforded Coex Miami" and "whether Coex Panama's account with [Cargill] was really for hedging." *Id*. And, again, no showing had been made "with respect to the price protection benefit of any individual transfer," precluding "a finding of reasonably equivalent value for any individual transfer." *Id*. at 31–32; *see Perlman*, 2021 WL 2598139, at *7; *World Vision*, 275 B.R. at 657.

Cargill objects to the R&R's conclusion that genuine issues of material fact preclude a finding of reasonably equivalent value on the basis of the $47 million or the price protection offered to Coex Miami. *See* Objs. at 12–18. As to the $47 million, Cargill argues that, to establish reasonably equivalent value as a matter of law, it is enough that Cargill returned that amount to Coex Panama and that Coex Panama, in turn, transferred it to Coex Miami. *See id*. at 12–15. As to the price protection, Cargill similarly argues that, "as a matter of law, reasonably equivalent value exists simply by virtue of the undisputed fact that" Coex Miami received some price protection from Coex Panama's swap transactions with Cargill. *See id*. at 15–17. Because Cargill raised these arguments before Judge Aaron, the Court reviews the applicable portions of the R&R for clear error. *See Harris*, 338 F. Supp. 3d at 174.

The Court disagrees with Cargill that the $47 million or any price protection, without more, are sufficient to establish reasonably equivalent value as a matter of law. Judge Aaron

8

correctly noted that "no showing has been made with respect to the value [received in exchange for] each individual transfer" or with respect to the "price protection benefit of any individual transfer," R&R at 30–32, showings that are necessary for the Court to "assess value . . . focusing on the precise transfer[s] in question and not on the value of the transfer[s] to the debtor's overall fraudulent enterprise," *Perlman*, 2021 WL 2598139, at *7 (citation omitted); *see World Vision*, 275 B.R. at 657 (stating that courts must "evaluat[e] the specific consideration exchanged by the debtor and the transferee in the specific transaction that the trustee seeks to avoid" (citation omitted)). Cargill makes no such showings before this Court. Additionally, although Cargill argues that "it will address good faith at trial," *see* R&R at 28 n.19, whether Cargill acted with good faith is "relevant in assessing whether [Coex Miami] received reasonably equivalent value in exchange for the [Challenged Transfers]," *Perlman*, 2021 WL 2598139, at *8. Here, the parties dispute whether Cargill acted with good faith. *See* Resp. at 2. Accordingly, the Court is not left with the "definite and firm conviction" that Judge Aaron erred in concluding that genuine issues of material fact remain unresolved on the question of reasonably equivalent value. *Easley*, 532 U.S. at 242 (citation omitted).

    B.  Damages

Next, Cargill objects to the R&R's recommendation that the Court should not, at this stage, reduce Plaintiff's damages demand. *See* Objs. at 4–5; R&R at 40. Cargill argues that the Court should reduce Plaintiff's damages demand by the $47 million received by Coex Miami. *See* Objs. at 20. Because Cargill raised this argument before Judge Aaron, the Court reviews the applicable portion of the R&R for clear error. *See Harris*, 338 F. Supp. 3d at 174.

The R&R recognizes that, under FUFTA, any damages award for a fraudulent transfer is subject to equitable adjustments. *See* R&R at 40. Judge Aaron, however, concluded that "any

9

equitable credits to which Cargill may be entitled should be addressed after a determination of the amount of any damages assessed against" it, and, therefore, after further evidence is presented at trial. *Id*. The Court agrees with Judge Aaron and is not left with the "definite and firm conviction" that he erred in reaching such conclusion. *Easley*, 532 U.S. at 242 (citation omitted); *see In re Pearlman*, 515 B.R. 887, 901 (Bankr. M.D. Fla. 2014) (declining to decide equitable adjustments to a damages award on summary judgment and instead deferring any adjustment until trial).

The Court has considered all of Cargill's objections. To the extent any are not expressly discussed herein, the Court has found that they are conclusory or otherwise an effort "to engage the district court in a rehashing of the same arguments set forth in the original [motion]." *Edwards*, 414 F. Supp. 2d at 346–47. The Court has reviewed those objections, as well as any portions of the R&R to which Plaintiff and Cargill do not object, for clear error and finds none.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES Cargill's objections to the R&R and ADOPTS the R&R in full. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 232 and 245.

SO ORDERED.

Dated: March 7, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge